**Mercedes Ivonne
SAMPAYO–GARRATON
Plaintiff,**

v.

**RAVE, INC.; Marianne Plaza Apparel Corporation; Petrie, Inc. Defendants.**

**Civ. No. 88–1787CC.**

United States District Court,
D. Puerto Rico.

Dec. 3, 1989.

Alberto E. Lugo–Janer, Isla Verde, P.R., for plaintiff.

James D. Noel, III, Ledesma, Palou & Miranda, Hato Rey, P.R., for defendants.

## ORDER

CEREZO, District Judge.

The case at bar is an action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, in which plaintiff, Mercedes Ivonne Sampayo–Garratón, alleges discrimination as to a condition or privilege of employment because of her sex in violation of law. We now consider a Motion for Partial Summary Judgment filed on July 7, 1989 (docket entry 13) by defendants, Rave Inc. and Marianne Plaza Apparel Corporation, pursuant to Rule 56 of the Federal Rules of Civil Procedure, which was opposed by plaintiff on July 24, 1989 (docket entry 15).

The facts of this case, as stated in the documents accompanying defendants' motion, are as follows: plaintiff is a female, of legal age, professional, single and a resident of San Juan, Puerto Rico. In 1982, while plaintiff was a college student, she began working with defendant Marianne, Inc., as a part-time employee. In less than a year plaintiff became a full-time employee. Soon afterward she was promoted to the position of Deputy–Manager of the Marianne's, Inc. store at Plaza Las Américas Shopping Center in Hato Rey, Puerto Rico.

In mid 1985, Marianne, Inc. opened a new chain of stores, known as Rave, Inc. Plaintiff was named Manager of the new Rave at Caguas. She was also entrusted with the responsibility of training the new personnel who was going to be assigned to the Rave stores set to open in Humacao, Bayamón, Ponce and Caguas.

On or about May of 1986 Mr. Juan Díaz, the person assigned by defendants to supervise the establishment of the new Rave stores in Puerto Rico, allegedly started to request plaintiff to go out with him after working hours. During the months of August and September of 1986, Mr. Díaz allegedly requested plaintiff to have sexual intercourse with him. On or about December of 1986, Mr. Díaz allegedly touched and fondled plaintiff in a sexually offensive manner and tried to kiss her on the mouth. During that same month, he also allegedly instructed the plaintiff to model for him. On or about April or May of 1987, it is claimed that Mr. Díaz again tried to kiss and fondle the plaintiff. This allegedly happened once more on August 1987.

On September 4, 1987, plaintiff was terminated from her employment because of alleged irregularities in certain bank deposits of the store proceeds. On October 28, 1987, she filed a charge for discrimination based on gender and sexual harassment before the Equal Employment Opportunity Commission (EEOC) and the Commonwealth of Puerto Rico Department of Labor Anti–Discrimination Unit. On October 20, 1988 she filed this complaint under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.*, against defendants Rave, Inc., Marianne Plaza Apparel Corp. and Petrie, Inc.,[1] claiming that the treatment received from Mr. Diaz, and the later dismissal from her job, constituted discrimination as to a condition or privilege of employment in violation of Title VII. Plaintiff also invoked the pendent jurisdiction of this Court to hear and adjudicate the claims arising from the same transaction which were violative of the Puerto Rico Discrimination Act, 29 LPRA § 146, the Puerto Rico Right to Employment Act, 29 LPRA § 1321, and the claim cognizable under Article 1802 of the Civil Code of Puerto Rico, 31 LPRA § 5141.

In their motion for partial summary judgment, defendants contend that the claims for acts of sexual harassment occurring prior to May 12, 1987 are time barred because plaintiff did not file charges with the EEOC and the local Anti–Discrimination Unit within 180 days after the alleged discriminatory acts took place, as required by Title VII for claimants in "non-deferral"

---

1. The plaintiff agreed to the voluntary dismissal of the claim against Petrie, Inc. at a scheduling conference held on March 7, 1989 (docket entry 8).

states. In the alternative, defendants argue that should this court conclude that Puerto Rico is to be considered a "deferral" state under the provisions of Title VII, then all sexual harassment claims taking place prior to January 12, 1987 should be dismissed for failure to file charges within 300 days after the incidents allegedly took place. Plaintiff, on the other hand, contends that the so-called doctrine of the "continuous violation," under which all her claims would be timely filed, is applicable to her case.

It is undisputed that timely filing is a prerequisite to the maintenance of a Title VII action. *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147 (1974). The limitations period established by Congress in that Act, while guaranteeing the protection of the civil rights laws to those who promptly assert their rights, also protects employers from the burden of defending claims arising from employment decisions that are long past. *Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980). Courts have held, however, that if a Title VII violation is of a continuing nature, a charge of discrimination filed with the appropriate agency may be timely as to all discriminatory acts encompassed by the violation, so long as the charge is filed during the life thereof or within the statutory period which commences upon the violation's termination. *Goldman v. Sears, Roebuck and Co.*, 607 F.2d 1014, 1018 (1st Cir.1979).

To establish a continuing violation, a party must demonstrate "that not only the injury, but the discrimination, is in fact ongoing." *Velázquez v. Chardón*, 736 F.2d 831, 833 (1st Cir.1984). As explained by the Court of Appeals for the First Circuit in *Goldman:*

> A continuing violation is not stated if all that appears from the complaint is that the plaintiff continues to suffer from the ongoing effects of some past act of discrimination ... "[c]omplaints based on civil rights statutes must do more than state simple conclusions; they must at least outline the facts constituting the alleged violation." ... If plaintiff meant to claim that the later refusals formed part of a continuous chain of misconduct, it was incumbent upon him to allege facts giving some indication that the later refusals were themselves separate civil rights violations.

607 F.2d at 1018 (citations omitted). Moreover, as the Supreme Court has stated, "the emphasis should not be placed on mere continuity; the critical question is whether any present violation exists." *United Air Lines v. Evans*, 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977).

Applying these principles to the case at bar, we must concur with plaintiff's contention that this is a case where the doctrine of continuous violation may be held to be applicable. For purposes of this motion, the undisputed facts were that Mr. Díaz, while an employee of the defendants, engaged in multiple acts of sexual harassment against plaintiff, extending from May of 1986 until August of 1987. All those incidents were properly outlined by plaintiff in the complaint, and if they actually occurred, this Court may hold after trial that they constituted a continuing course of discriminatory conduct rather than isolated discriminatory acts. Because the last of these incidents took place well within the 300-day period [2] prior to the filing of charges with the EEOC and the local Anti-Discrimination Unit, none of the alleged discriminatory acts would then be time barred, as claimed by defendants. *Clark v. Olinkraft Inc.*, 556 F.2d 1219 (5th Cir. 1977); *Jones v. Birdsong*, 530 F.Supp. 221 (N.D.Miss.1980); *E.E.O.C. v. Sears, Roebuck and Co.*, 490 F.Supp. 1245 (M.D.Ala. 1980); *Kohne v. IMCO Container Co.*, 480 F.Supp. 1015 (W.D.Va.1979); *Wilson v. Allied Chemical Corp.*, 456 F.Supp. 249 (E.D. Va.1978). Therefore, if the doctrine of con-

---

**2.** Puerto Rico is a "deferral" state within the meaning of section 706(b) and (d) of the Equal Employment Opportunity Act, 42 U.S.C. § 2000e-5(c) and (e), in which employees have 300 days after unlawful employment practice to file charges with the Equal Employment Opportunity Commission. *Calderón-Trujillo v. Ready Mix Concrete, Inc.*, 635 F.Supp. 95 (D.P.R.1986).

tinuous violation is applicable, the court will have jurisdiction to remedy all those practices, if proven. Accordingly, at this time none of the claims made by plaintiff under Title VII, will be dismissed, as requested by defendants.

■ Defendants also argue in their motion for partial summary judgment that the court should abstain from exercising pendent jurisdiction over the plaintiff's claims under the Puerto Rico Discrimination Law, 29 LPRA § 146, the Puerto Rico Right to Employment Act, 29 LPRA § 1321, and the Article 1802 of the Civil Code of Puerto Rico, 31 LPRA § 5141. They base their request on the differences existing between Title VII and the local laws, with regard to burden of proof and remedies available. Plaintiff contends, however, that the court should exercise its pendent jurisdiction to avoid duplicative proceedings in federal and state courts.

The test for pendent jurisdiction, as originally established by the Supreme Court in *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), requires a two-step determination: first, there must be a substantial federal claim; and second, the state and federal claims must derive from a common nucleus of operative facts. However, in *Owen Equipment and Erection Co. v. Kroger*, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978), the Court added a third element to the test for pendent jurisdiction, by holding that:

a finding that federal and non-federal claims arise from a "common nucleus of operative facts," the test of *Gibbs*, does not end the inquiry into whether a federal court has power to hear the non-federal claims along with the federal ones. Beyond this constitutional minimum, there must be an examination of the posture in which the non-federal claim is asserted and of the specific statute that confers jurisdiction over the federal claim, in order to determine whether "Congress in [that statute] has ... expressly or by implication negated" the exercise of jurisdiction over the particular non-federal claim.

*Id.*, at 373, 98 S.Ct. at 2402, quoting *Aldinger v. Howard*, 427 U.S. 1, 18, 96 S.Ct. 2413, 2422, 49 L.Ed.2d 276 (1976).

Relying upon *Aldinger* and *Kroger*, various courts have held that several procedural characteristics of Title VII, as well as a specific congressional limitation on the nature of the relief and the amount of recovery available under that federal statute, negated by implication, the exercise of pendent jurisdiction over non-federal claims. *See Chavez v. Guaranty Bank & Trust Co.*, 607 F.Supp. 484 (D.Colo.1985); *Redenbaugh v. Valero Energy Corp.*, 603 F.Supp. 138 (W.D.Tex.1985); *Haroldson v. Hospitality Systems, Inc.*, 596 F.Supp. 1460 (D.Col.1984); *Mongeon v. Shellcraft Industries, Inc.*, 590 F.Supp. 956 (D.Ver. 1984); *Frye v. Pioneer Logging Machinery, Inc.*, 555 F.Supp. 730 (D.S.C.1983); *Bennett v. Southern Marine Management, Co.*, 531 F.Supp. 115 (M.D.Fla.1982); *Jong–Yul Lim v. Intern. Inst. of Metro. Detroit*, 510 F.Supp. 722 (E.D.Mich.1981); *Kiss v. Tamarac Utilities, Inc.*, 463 F.Supp. 951 (S.D.Fla.1978). As explained in *Lim, supra:*

The limited grant of relief under Title VII is an indication of congressional intent to negate the exercise of pendent jurisdiction over the plaintiff's state law claims. The relief available to an aggrieved party under the federal statute is equitable in nature.... The statutory exclusion of legal remedies under Title VII reveals a congressional desire to restrict the type of relief awarded in discrimination claims brought under this statute. Joinder of state law claims under which a plaintiff may be entitled to compensatory or punitive damages directly conflicts with this congressional intent of limited relief.

. . . .

Perhaps most significant in revealing congressional negation of the exercise of pendent jurisdiction under these circumstances are the specific procedural limitations contained in Title VII. The foremost procedural limitation surfaces in the form of the express congressional determination that Title VII claimants

are not entitled to a jury trial. 42 USC § 2000e–5(f)(4). In addition, Congress has specifically set forth the time within which claims under Title VII should be adjudicated, one-hundred twenty (120) days. 42 USC § 2000e–5(f)(5). Congress has also provided for an alternative method of adjudication, trial by a master, if the court finds that the Title VII claim cannot be tried within the 120 days.

*Id.*, at 725 (citations omitted).

We are persuaded by this analysis, and, therefore, conclude that even if we were to hold that the sex discrimination claim is a substantial federal claim and the same operative facts give rise to both state and federal claims, the exercise of pendent jurisdiction in this case is precluded by the *Kroger* test. Having reached this determination, we need not consider the issues of state law also raised by defendants in their motion for partial summary judgment.

Accordingly, the motion for partial summary judgment filed by defendants is hereby DENIED in part and GRANTED in part.

SO ORDERED.